©COPY

FILED

2011 DEC 29 PM 3:54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _____

1  CATHERINE R. JASPER 97306
   cjasper@tradesecretslegal.com
2  STUART P. JASPER 91378
   sjasper@tradesecretslegal.com
3  JASPER & JASPER, P.C.
   19800 MacArthur Boulevard, Suite 860
4  Irvine, California 92612
   Telephone:  (949) 756-1560
5  Facsimile:  (949) 756-2251

6  Attorneys for Plaintiff
7  Buddy Lee "Bud" Barr

*(left margin, vertical)* JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

8                 UNITED STATES DISTRICT COURT
9                 CENTRAL DISTRICT OF CALIFORNIA
10                       SOUTHERN DIVISION

11 | Buddy Lee "Bud" Barr,

12              Plaintiff,                    **CV11-10805 R(FFMx)**

13        vs.

14 | HD Supply Construction Supply Ltd., a    **COMPLAINT FOR DAMAGES**
15 | Florida limited partnership, dba HD      **FROM AGE DISCRIMINATION**
     Supply White Cap Construction Supply,
16 | and HD Supply, Inc., a Delaware          *Age Discrimination in Violation of*
     corporation, and Does 1 through 10,      *California Fair Employment & Housing*
17 | inclusive,                               *Act (FEHA)*
18
19              Defendants.                   (1)  By Demotion;
                                              (2)  By Denial of Promotion;
20                                            (3)  By Termination of Employment;
                                              (4)  By Retaliatory Discharge;
21                                            (5)  By Disparate Impact;
                                              (6)  Common Law, Tortious Wrongful
22                                                 Discharge in Violation of Public
                                                   Policy; and
23                                            (7)  By Failure to Take All Reasonable
24                                                 Steps Necessary to Prevent Age
                                                   Discrimination
25
26                                            (Jury trial demanded)
27
28

COMPLAINT FOR DAMAGES FROM AGE DISCRIMINATION

1  Plaintiff Buddy Lee "Bud" Barr ("Barr") alleges as follows:

2  **Allegations Common to All Claims**

3  **The Parties**

4      1.    This court has jurisdiction based on diversity of citizenship. (28 U.S.C.

5  § 1332 (1)).  Barr is a California citizen who resides in Huntington Beach,

6  California.  He was born in 1946.

7      2.    Defendant HD Supply Construction Supply Ltd., a Florida limited

8  partnership with its principal place of business in Atlanta, Georgia, does business as

9  HD Supply White Cap Construction Supply, a registered trade name (jointly "White

10  Cap").  White Cap is a citizen of Georgia.  White Cap has one general partner and

11  two limited partners.  One limited partner is HD Supply Construction Supply Group,

12  Inc., a Delaware corporation with its principal place of business in Atlanta, Georgia,

13  and is a citizen of Georgia.  The other limited partner is White Cap Construction

14  Supply, Inc., a Delaware corporation with its principal place of business in Atlanta,

15  Georgia, and is a citizen of Georgia.  The general partner is HD Supply GP &

16  Management, Inc., which is a Georgia corporation with its principal place of

17  business in Atlanta, Georgia and is a citizen of Georgia.

18      3.    Defendant HD Supply, Inc. ("HDS"), a Delaware corporation with its

19  principal place of business in Atlanta, Georgia, is a citizen of Georgia. HDS is the

20  parent company of defendant White Cap, among other HD Supply-related entities.

21      4.    Excluding interest and costs, the amount in controversy exceeds the

22  statutory minimum of $75,000.  Barr has economic damages of more than $1.6

23  million.  There is complete diversity of citizenship.

24      5.    A substantial part of the events or omissions giving rise to the claim,

25  including demotion, denial of promotion, and termination, occurred in Orange

26  County, California. All of Barr's employment was in California. Venue lies here.

27  (28 U.S.C. § 1391.)

28      6.    White Cap is the nation's largest supplier of specialized hardware,

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

1

1  tools, building materials, and safety equipment to medium and large contractors, and

2  operates more than 150 stores in more than two dozen states.

3      7.      Defendants White Cap and HDS ("defendants") each have five or more

4  employees.  Each is an employer within FEHA.

5      8.      HDS is sued as a co-employer.  The basis for doing so is that on April

6  12, 2011, at the meeting in which Barr was terminated, Tamra Barnard, a Human

7  Resources ("HR") manager acting on behalf of HDS ("Barnard"), delivered to Barr

8  and requested that Barr enter into a "Separation Agreement & Release of Claims"

9  ("Release").  The release states that it is between HDS, its subsidiaries, affiliates,

10 predecessors, and related entities, jointly defined as "the Company," and Barr as

11 "Employee."  The recitals state: "the Employee's employment with the Company is

12 being terminated by mutual agreement. . . ."

13     9.      The true names and capacities, whether individual, corporate, agent,

14 representative, or otherwise of defendants named herein as Does 1 through 10,

15 inclusive, are unknown to plaintiff at this time, who therefore sues these defendants

16 by fictitious names.  Plaintiff will seek leave of court to amend this complaint to

17 allege their true names and capacities once that information has been ascertained.

18 On information and belief, and based on such information and belief, plaintiff

19 alleges that each of the fictitiously named defendants is responsible in some manner,

20 way or form and to some extent for acts, events and occurrences alleged in this

21 complaint.  Wherever appearing in this complaint, each and every reference to

22 "defendants" is intended to be and shall be a reference to all defendants in this

23 action, and each of them, including but not limited to all fictitiously named

24 defendants.

25     10.     Each of the defendants named herein was doing business as the agent,

26 principal, servant, representative, employer, employee, joint venturer, partner,

27 parent, subsidiary, affiliate and/or alter ego of each and every other defendant and in

28 doing the things hereinafter alleged was acting within the course or scope of such

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

2

1   authority as the agent, principal, servant, representative, employer, employee, joint

2   venturer, partner, parent, subsidiary, affiliate or alter ego with the permission and

3   consent of the remaining defendants.

### Exhaustion of Administrative Remedies

5       11.    Barr filed administrative complaints with the California Department of

6   Fair Employment and Housing ("DFEH") under the Fair Employment and Housing

7   Act ("FEHA") on or about May 11, 2011, as amended June 16, 2011. The DFEH

8   issued notices of case closure and right to sue letters on or about May 11, 2011, as

9   amended June 16, 2011.  All of the above documents were served on defendants at

10   or about said times.  Barr exhausted his administrative remedies.

### Barr Was a Top Sales Manager and Among the Highest Paid.

12       12.    In November 1997, White Cap hired Barr away from its leading

13   competitor, Orco Construction Supply, Inc. ("Orco").  Barr had been Orco's sales

14   manager and became a sales manager for White Cap.

15       13.    For twelve years, from 1997 through 2009, Barr worked for White Cap

16   as a sales manager, often ranking first or second in sales.  Barr persuaded Orco's key

17   salespersons, sales managers, and customers to switch to White Cap when Barr left

18   Orco in 1997 and when White Cap bought Orco out of bankruptcy in 2009.  As of

19   2009 and early January 2010, Barr was the district sales manager ("DSM") for three

20   counties, *i.e.,* Los Angeles, Orange, and Ventura Counties, had about eighteen

21   salesmen reporting to him, and was among White Cap's highest paid employees.

22       14.    From November 1997 until 2007, Barr earned $270,000 per year.  From

23   2007 until October 8, 2010, he earned base pay of $320,000 per year.  From October

24   8, 2010 until April 12, 2011, his annual base pay was $150,000.

25       15.    White Cap never gave Barr a performance rating of less than On Target

26   until the performance review associated with his termination.   Barr never received a

27   written criticism of his job performance.

28

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

COMPLAINT FOR DAMAGES FROM AGE DISCRIMINATION

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

**In 2009 Decisionmakers Made Age-Related Comments Directed at Barr.**

16.     Beginning in or about late 2009, decisionmakers at White Cap made comments directed at Barr which reflected age stereotypes. (In age stereotypes, "[o]ld people are categorized as senile, rigid in thought and manner, old-fashioned in morality and skills." *(Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 896 (citations omitted); Cal.Code Regs., title 2, sec. 7295 (prohibits employment "conditioned upon age-based stereotypes and unsupported generalizations.").)

17.     In late 2009, Andrew Denerson ("Denerson"), Barr's immediate supervisor, told another sales manager: *"Bud is an old timer that can't change his ways."* Referring to Barr, Denerson separately told two sales managers: *"You can't teach an old dog new tricks."* Denerson wrote in Barr's performance review: *"I need him to look past old faith."* The characterizations were false, age stereotypes. In 2009-2010, senior vice president, southwest region Robert Jacoby ("Jacoby"), another direct supervisor of Barr's, often asked Barr when he would retire.

**During 2009-2011 Defendants Had a Policy and Practice
of Replacing Managers With Significantly Younger Persons.**

18.     During 2009 to 2011, defendants had a policy and practice in California of removing managers who were performing according to their employers' legitimate expectations and replacing them with significantly younger workers.

19.     In January 2010, Barr was satisfactorily performing as DSM for Los Angeles, Orange, and Ventura counties when White Cap removed him as DSM. Kevin Cooper, a significantly younger salesman without substantial sales manager experience replaced Barr in a major portion of Barr's duties.

20.     Defendants had a policy and practice of offering a severance payment to terminated managers conditioned not only on their executing a release, but also a covenant not to compete ("CNC") in violation of Cal. Bus. & Prof. C. sec. 16600.

21.     In January 2010 White Cap gave Barr a choice of becoming national

4

1   pricing manager or being laid off.  Barr took the job rather than be laid off.

2        22.    Beginning in January 2010 Barr continually expressed interest in

3   positions in sales, sales management, and sales training (jointly "sales").  In 2010

4   several sales manager positions in California became available.  Barr was qualified

5   (and among the most qualified candidates).  In 2010, White Cap did not discuss with

6   Barr or consider him for any sales position.

7        23.    Later in January 2010, White Cap terminated a sales manager, Robert

8   Hager, who was performing competently.  It replaced him with a younger, less

9   experienced person, Cooper (the same person who replaced Barr).

10       **White Cap's CEO Told Its Executives Something Had to Be Done About its**

11                                  **Aging Workforce.**

12        24.    In March 2010, HDS's CEO, Joseph D'Angelo, hired John A.

13   Stegeman ("Stegeman"), as Executive President of White Cap and several other

14   divisions.

15        25.    In July 2010, Stegeman told a large group of his senior executives at a

16   meeting in Dallas, Texas that White Cap had an aging workforce, that health costs

17   due to an aging workforce would skyrocket, and that they (White Cap) needed to do

18   something about it ("the Dallas Meeting").

19        26.    Stegeman made these statements with the knowledge and consent of

20   HDS.  HDS shared White Cap's goal of reducing the number of older employees,

21   especially older managers.

22        27.    Attending the Dallas Meeting were decisionmakers as to Barr:

23   (a) Jacoby, one of several supervisors of Barr; (b) Ian G. Heller, vice president,

24   marketing and merchandising ("Heller"), soon-to-be Barr's supervisor; (c) Robert

25   Joseph, vice president, human resources; and (d) Stegeman himself.

26        28.    Several persons present at the Dallas Meeting told Barr of Stegeman's

27   age-related statements.

28        29.    Within days after the Dallas Meeting, Stegeman fired Rik Gagnon,

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

5

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

1   Senior Vice President, Sales and Marketing ("Gagnon"), labeling his departure a

2   "retirement," an age-related term.  Stegeman was 49, Gagnon 57.  Heller recently

3   had assumed Gagnon's marketing role.  Heller was significantly younger.

4       30.    At all times Barr competently performed his job as pricing manager and

5   met his employers' legitimate expectations.

6   <div align="center">**FIRST CLAIM FOR RELIEF**</div>

7   <div align="center">**(Demotion to Non-Viable Position, Against White Cap and Does 1-10)**</div>

8       31.    Plaintiff incorporates ¶¶ 1 through 30 by reference.

9       32.    In or about September 2010 Barnard and Heller summoned Barr to a

10   meeting.  Barnard said Barr was being removed as pricing manager and had two

11   days to accept a marketing manager position at $150,000 per year ("the marketing

12   position") or be laid off (jointly "the demotion").

13       33.    Barnard asserted, and Barr disputed, that Barr would be subject to a

14   CNC he had previously signed, if he left the company.  Barr had not signed a CNC.

15   A CNC would have been illegal.

16       34.    Barr expressed doubt to Barnard and Heller as to his ability to

17   adequately perform the marketing position duties.  He said he lacked marketing

18   experience, did not know the computer software programs used by the marketing

19   department, and he would require training ("the stated job deficiencies").

20       35.    White Cap maintained its position that Barr would be terminated unless

21   he took the marketing position. White Cap did not provide Barr with the training he

22   required to be successful in the marketing position.

23       36.    White Cap knew or should have known that the marketing position was

24   not viable for Barr because of the stated job deficiencies.

25       37.    At or about the time of the demotion, there were opportunities in sales

26   for which Barr was qualified and for which he was neither considered nor notified.

27       38.    The demotion was pretextual, was intended to cause Barr to fail or was

28   made with reckless disregard for whether Barr would fail, and occurred because of

<div align="center">6</div>

1  his age, 63.

2      39.    The demotion was part of a pattern and practice of age discrimination
3  against managers over 40 years old in 2009 to early 2011 and part of a continuing
4  violation of age discrimination by defendants against Barr.

5      40.    The demotion was age discrimination in violation of FEHA, Gov. C.
6  sec. 12940 subd.(a).

7      41.    As a proximate result of the demotion, Barr incurred lost wages (a
8  reduction from $320,000 to $150,000 annually), suffered emotional distress and
9  other general damages, and reasonable expert witness and attorneys' fees.  Barr
10  seeks pre-judgment interest on all liquidated sums.

11      42.    The age discrimination was intentional.  Setting up a company's star
12  sales manager to fail by deliberately placing him in a non-viable position, when his
13  only other option was to be fired, was despicable, malicious, and oppressive.
14  Punitive damages are warranted.

15  <center>**SECOND CLAIM FOR RELIEF**</center>

16  <center>**(Denial of Promotion to Safety Sales Manager,**</center>

17  <center>**Against White Cap and Does 1-10)**</center>

18      43.    Plaintiff incorporates ¶¶ 1-30 by reference.

19      44.    In early 2011, White Cap approved a company-wide initiative to sell
20  more safety equipment.  It created a new position of safety sales manager ("the
21  safety position").

22      45.    The safety position offered a higher salary and more responsibility than
23  the marketing position.  It would be a promotion for Barr.

24      46.    Barr was qualified for the safety position.

25  <center>**Defendants Established A Biased Selection Process**</center>

26      47.    It would have been in accord with White Cap's usual procedures for
27  Jacoby, on his own authority, to appoint Barr to the safety position.

28      48.    Jacoby, instead of appointing Barr, handpicked a four member selection

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

<center>7</center>

1    panel, including Denerson, which was predisposed against Barr.

2        49.    When Barr learned of this, he complained to Jacoby about the biased

3    process and again urged Jacoby to select him without further delay.

4        50.    Defendants did not investigate Barr's complaint or take any action to

5    prevent discrimination against Barr in the selection process.

6        51.    On February 24, 2011, the panel interviewed Barr ("the interview").

7    During the interview the panel failed to ask Barr any specific questions regarding the

8    safety position.  The panel used an inappropriate document, one used for novice

9    salespersons, to question Barr.

10       52.    The panel purportedly found that Barr was not the best qualified for the

11   safety position.  The selection process was biased and the decision pretextual.

12       53.    White Cap selected Craig Taylor, in his forties, over Barr, who was 64

13   years old.

14       54.    Age was the actual reason.  The stated reason was that Taylor was

15   superior to Barr.  The stated reason was false and pretextual.

16       55.    White Cap ratified the decision as shown below.  White Cap delayed

17   notifying Barr of his failure to be promoted to the safety position until March 31,

18   2011.

19       56.    The delay maximized harm to Barr by giving him notice simultaneously

20   of his failure to get the safety position and his removal from the marketing position.

21   **On April 6, 2011, Barr Complained to Jacoby of Age Discrimination.**

22       57.    On March 31 and April 1, 2011, Barr complained orally and by e-mail

23   that the process which resulted in the selection of Taylor had been biased.  On April

24   6, 2011, Barr e-mailed Jacoby ("the e-mail"):

25           "After further reflection I really do believe that *my age*

26           *must have been the major factor in me not getting the*

27           *job*. I can come up with no other reason.  And as my last

28           email expressed, I feel I was by far the most qualified for

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

8

1   this position.  I think we should talk upon your return."

2   (emphasis added).

3   58.   Jacoby agreed to meet with Barr but never did.

4   59.   White Cap took no appropriate action in response to Barr's complaint of age discrimination.   At no time before firing Barr six days later, on April 12, 2011, did White Cap investigate Barr's claim of age discrimination.

60.   Denial of the safety position was because of age bias, violating Gov. C. sec. 12940 (a).

61.   As a proximate result, Barr incurred lost wages (both backpay and frontpay), emotional distress, other general damages, expert witness fees, and attorneys' fees.  Barr seeks pre-judgment interest on all liquidated sums.

62.   Denial of the promotion to the safety position was part of a pattern and practice of age discrimination by defendants against Barr. The above acts and omissions were despicable conduct, malicious, fraudulent, and oppressive.  Punitive damages are appropriate.

### THIRD CLAIM FOR RELIEF

### (Termination of Employment, Against White Cap, HDS and Does 1-10)

63.   Plaintiff incorporates ¶¶ 1-30, 32-39 and 44-59 by reference.

### Defendants Removed Barr From Marketing Without Disclosing His Status.

64.   On or about March 31, 2011, Heller and HR representative Jamie Wiklem ("Wiklem") summoned Barr to a meeting, told Barr he was being removed from the marketing position.  Barr was told that the job was a bad fit for him due to Barr's lack of marketing experience and alleged lack of computer skills.

65.   Heller and Wiklem gave Barr his annual performance review for the fiscal year February 1, 2010 to January 31, 2011.  Of that period, Barr had been in the marketing position for four months, from October 2010 through January 31, 2011, and in the pricing position the prior eight months.

66.   Barr's performance in the marketing position and previously as pricing

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

9

1  manager satisfied defendants' legitimate expectations.

2      67.    Heller's gave Barr high marks for his performance in the marketing

3  department, given the circumstances.  (See para. 73 *post*.)

4      68.    At the end of the March 31, 2011 meeting, Barr asked if he was still

5  employed by White Cap. Wiklem said she did not know, and told Barr to let *her*

6  know if and when he learned if he had a job.

7      69.    Putting Barr in limbo in this manner was intended by defendants to

8  encourage him to stop coming to work and risk being accused of abandoning his

9  position, and resigning implicitly, or else to encourage him to resign expressly.

10     70.    Defendants sought to cause Barr so much distress that he would resign.

11     71.    By design, moments after Wiklem had told Barr she did not know if he

12  still had a job, Barr was advised by a member of the interview panel that he was not

13  getting the safety position.  The timing was intended to and reasonably did cause

14  Barr emotional distress.

15  **On April 12, 2011 White Cap Terminated Barr in an Ostensible Layoff**

16     72.    On April 12, 2011 Barr was called into a meeting with Barnard and

17  Heller.  Barnard told Barr he was laid off.  Barnard told Barr that his numbers were

18  down, he had not met the goals, and he was not a good fit for the marketing position.

19  She said, "You are being laid off, it's an involuntary lay-off."

20     73.    In the final performance review given to Barr on March 31, 2011,

21  Heller stated:

22         I believe Bud has the skills to make an important contribution for

23         White Cap if he can find a role in the field.  *He isn't a good fit in*

24         *the Marketing Department simply because he doesn't have the*

25         *experience or training to succeed here.*  He has tried hard to find

26         ways of adding value and he works hard, despite some difficult

27         circumstances.  He has maintained a very positive attitude even

28         as his responsibilities have changed and I would like to help him

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

10

1    find a good fit within White Cap if possible. (Emphasis added.)

2        74.    Barnard's comment about Barr's numbers being down was pretextual.

3    The performance review did not allege that Barr was given specific numeric or

4    financial goals which he failed to meet.  Heller's comments did not state that Barr

5    failed to meet any goals or expectations because of any fault by Barr.  To the

6    contrary, Heller commented that Barr was not a good fit "simply because he doesn't

7    have the experience or training to succeed here."

8        75.    The claim that Barr was the subject of a layoff was false or pretextual.

9        76.    Barnard presented to Barr for signature a Release with a CNC in

10   violation of Bus. & Prof. C. section 16600, as follows:

11       . . . Employee will not, for a period of six (6) months following the

12       Termination Date, directly or indirectly solicit or attempt to solicit

13       any business related to the business of the Company existing as of

14       the Termination Date from any of the Company's customers or

15       suppliers with whom Employee had business contact or about

16       whom Employee received Confidential Information during the

17       one-year period prior to Employee's Termination Date. . .

18       77.    Barr's termination was because of age discrimination in violation of

19   Gov. C. sec. 12940 (a).

20       78.    As a proximate result of the termination, Barr incurred lost wages (both

21   backpay and frontpay), emotional distress, other general damages, expert witness

22   fees, and attorneys' fees.  Barr seeks pre-judgment interest on all liquidated sums.

23       79.    The intentional age discrimination described herein demonstrates

24   malice, fraud, and oppression, warranting an award of punitive damages.

### FOURTH CLAIM FOR RELIEF

**(Termination of Employment in Retaliation for Opposition to Age Discrimination, Against White Cap, HDS and Does 1-10)**

28       80.    Plaintiff incorporates ¶¶ 1-32, 44-59, and 64-76 by reference.

11

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

81.    As alleged above, Barr complained to Jacoby about unfair treatment and age discrimination.  The last complaint, the e-mail, was on April 6, 2011.

82.    After receiving these complaints, defendants did not investigate them.

83.    As a proximate result of Barr's opposition to age discrimination by complaining expressly about it, defendants fired Barr on April 12, 2011.

84.    This violated FEHA, Gov't C. sec. 12940 (h) ("because the person has opposed any practices forbidden under this part").

85.    As a proximate result of being fired, Barr incurred lost wages (backpay from April 12, 2011and frontpay until age 70), emotional distress, other general damages, and reasonable expert witness and attorneys' fees.  Barr seeks pre-judgment interest on all liquidated sums.

86.    The acts of intentional age discrimination and related attempt to restrict Barr's post termination employment constitute malice, fraud, and oppression, and warrant an award of punitive damages.

## FIFTH CLAIM FOR RELIEF

### (Adverse Employment Action Based Upon Disparate Impact, Against White Cap, HDS, and Does 1-10)

87.    Plaintiff incorporates ¶¶ 1-30 by reference.

88.    Defendants used facially neutral employment practices that had a significant disparate and discriminatory impact on Barr and other employees over 40 years old ("the discriminatory practices") as set forth below:

a.    the process used in determining whether a given job is or is not viable;

b.    the process used in determining what reassignment should be made when an employee is placed in a job which is not a viable one;

c.    the "involuntary layoff" of April 12, 2011;

d.    the process in which a manager's compensation was considered in taking adverse personnel actions; and

e.    the process used in preparing, interpreting and applying written

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

COMPLAINT FOR DAMAGES FROM AGE DISCRIMINATION

1   performance reviews.

2       89.   The above-referenced discriminatory practices of defendants were

3   known to, consented to, and ratified by senior executives of HDS and by Stegeman

4   and other senior executives of White Cap.

5       90.   The foregoing acts and omissions by defendants were in violation of

6   Government Code secs. 12940 and 12941.

7       91.   As a proximate result of the foregoing acts and omissions, Barr was

8   terminated and incurred lost wages, emotional distress, other general damages, and

9   reasonable expert witness and attorneys' fees.  Barr seeks pre-judgment interest on

10   all liquidated sums.

11       92.   The above acts and omissions were done with conscious disregard for

12   the adverse effect they would have on persons older than forty years old, were

13   despicable, malicious, fraudulent, and oppressive, and warrant punitive damages.

### SIXTH CLAIM FOR RELIEF

### (Common Law, Tortious Wrongful Discharge in Violation of
### Public Policy, Against White Cap, HDS, and Does 1-10)

17       93.   Plaintiff incorporates by reference ¶¶ 1-30, 44-59, 64-76, and 88-89.

18       94.   California has a well established, fundamental, and FEHA-based public

19   policy against age discrimination which forms the predicate for a common law claim

20   of tortious wrongful discharge in violation of public policy ("tortious wrongful

21   discharge").  (*Stevenson, supra*; Gov't C. §§ 12940, 12941).

22       95.   Termination of Barr's employment was tortious wrongful discharge.

23       96.   As a proximate result, Barr incurred lost wages (both backpay and

24   frontpay), emotional distress, other general damages, and pre-judgment interest on

25   all liquidated sums.  Plaintiff seeks attorneys' fees under C.C.P. sec. 1020.

26       97.   The acts of intentional age discrimination and related acts constitute

27   malice, fraud, and oppression, warranting an award of punitive damages.

28

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

COMPLAINT FOR DAMAGES FROM AGE DISCRIMINATION

## SEVENTH CLAIM FOR RELIEF

### (Violation of FEHA by Failure to Take All Reasonable Steps Necessary to Prevent Age Discrimination, Against White Cap, HDS, and Does 1-10)

98.   Plaintiff incorporates by reference ¶¶ 1-30, 32-39, 44-59, 64-76, and 88-89.

99.   Defendants failed to take all reasonable steps necessary to prevent age discrimination against Barr, in violation of Govt. Code sec. 12940 subd.(k) (unlawful employment practice "[f]or an employer . . . to fail to take all steps necessary to prevent discrimination . . . from occurring.")

100.   This claim is viable only if any prior FEHA claim is proved.

101.   As a proximate result Barr incurred lost wages (both backpay and frontpay), emotional distress, other general damages, and reasonable expert witness and attorneys' fees.  Barr seeks pre-judgment interest on all liquidated sums.

102.   The above acts and omissions demonstrate a conscious disregard for complying with an employer's statutory obligation to prevent age discrimination; show malice, fraud, and oppression; and warrant an award of punitive damages.

### **PRAYER**

WHEREFORE, plaintiff prays for relief as follows:

1.   Damages for lost wages, including back pay and front pay;

2.   Damages for emotional distress and other general damages;

3.   Special damages according to proof at trial;

4.   Pre-judgment interest;

5.   Reasonable expert witness fees (Gov. C. § 12989.3 (subd.(g));

6.   Reasonable attorneys' fees (C.C.P. sec. 1020; Gov. C. § 12989.3 (subd.(g));

7.   For punitive damages according to proof; and

8.   For such other and further relief to deter age discrimination pursuant to

COMPLAINT FOR DAMAGES FROM AGE DISCRIMINATION

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

1      Gov. C. § 12920.5 as the court deems just and proper.

2

3    Dated:  December 29, 2011              JASPER & JASPER, P.C.

4

5                                          CATHERINE R. JASPER

6                                          Attorneys for Plaintiff Buddy Lee "Bud"

7                                          Barr

8

9                          **JURY DEMAND**

10       Plaintiff demands trial by jury.

11

     Dated:  December 29, 2011              JASPER & JASPER, P.C.
12

13

14                                         CATHERINE R. JASPER

15                                         Attorneys for Plaintiff Buddy Lee "Bud"
                                           Barr
16

17

18

19

20

21

22

23

24

25

26

27

28

15

JASPER & JASPER, P.C.
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612
949-756-1560

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV11- 10805 R (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Catherine R. Jasper (97306)
Stuart P. Jasper (91378)
Jasper & Jasper, P.C.
19800 MacArthur Boulevard, Suite 860
Irvine, California 92612; (949) 756-1560

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Buddy Lee "Bud" Barr<br><br>PLAINTIFF(S)<br><br>v.<br><br>HD Supply Construction Supply Ltd., a Florida limited partnership, dba HD Supply White Cap Construction Supply, and HD Supply, Inc., a Delaware corporation<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11-10805 R(FFMx)**<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):     HD Supply, Inc., a Delaware corporation

        A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _____ Catherine R. Jasper _____, whose address is ____ 19800 MacArthur Boulevard, Suite 860, Irvine, California 92612 ____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.


                                        Clerk, U.S. District Court


Dated: ____ DEC 2 9 2011 ____          By: ___ *Nancy Internano* ___  SEAL
                                             Deputy Clerk

                                             *(Seal of the Court)*


*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Catherine R. Jasper (97306)
Stuart P. Jasper (91378)
Jasper & Jasper, P.C.
19800 MacArthur Boulevard, Suite 860
Irvine, California 92612; (949) 756-1560

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Buddy Lee "Bud" Barr | CASE NUMBER |
| PLAINTIFF(S) | **CV11-10805 R(FFMx)** |
| v. | |
| HD Supply Construction Supply Ltd., a Florida limited partnership, dba HD Supply White Cap Construction Supply, and HD Supply, Inc., a Delaware corporation | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):    HD Supply Construction Supply
Ltd., a Florida limited partnership
dba HD Supply White Cap
Construction Supply

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _____Catherine R. Jasper_____, whose address is _____19800 MacArthur Boulevard, Suite 860, Irvine, California 92612_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    ____DEC 29 2011____

By: ____Nancy Interiano____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>Buddy Lee "Bud" Barr | DEFENDANTS<br>HD Supply Construction Supply Ltd., a Florida limited partnership, dba HD Supply White Cap Construction Supply, and HD Supply, Inc., a Delaware corporation |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Catherine R. Jasper (97306); Stuart P. Jasper (91378)<br>Jasper & Jasper, P.C., 19800 MacArthur Blvd., Suite 860, Irvine, CA 92612<br>(949) 756-1560 | Attorneys (If Known)<br>John E. Lattin, IV (949) 798-2156; jlattin@laborlawyers.com<br>Todd B. Scherwin (949) 798-2181; tscherwin@laborlawyers.com<br>Fisher & Phillips LLP, 2050 Main Street, Suite 1000, Irvine, CA 92614 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES -** For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 1.7 Million

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Diversity, 28 USC Sec. 1332 subd.(1). Age discrimination under California Fair Employment and Housing Act, Govt.Code Sec. 12940.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | PERSONAL PROPERTY | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 370 Other Fraud | Vacate Sentence | Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 371 Truth in Lending | Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 380 Other Personal | ☐ 530 General | Relations |
| Rates/etc. | ☐ 150 Recovery of | Slander | Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation | Overpayment & | ☐ 330 Fed. Employers' | ☐ 385 Property Damage | ☐ 540 Mandamus/ | Reporting & |
| ☐ 470 Racketeer Influenced | Enforcement of | Liability | Product Liability | Other | Disclosure Act |
| and Corrupt | Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | ☐ 422 Appeal 28 USC | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | 158 | FORFEITURE / | Litigation |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 | PENALTY | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle | USC 157 | ☐ 610 Agriculture | Security Act |
| ☐ 850 Securities/Commodities/ | ☐ 153 Recovery of | Product Liability | CIVIL RIGHTS | ☐ 620 Other Food & | PROPERTY RIGHTS |
| Exchange | Overpayment of | ☐ 360 Other Personal | ☐ 441 Voting | Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 | Veteran's Benefits | Injury | ☒ 442 Employment | ☐ 625 Drug Related | ☐ 830 Patent |
| USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- | ☐ 443 Housing/Acco- | Seizure of | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | Med Malpractice | mmodations | Property 21 USC | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 444 Welfare | 881 | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization | Liability | Product Liability | ☐ 445 American with | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal | Disabilities - | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | REAL PROPERTY | Injury Product | Employment | ☐ 650 Airline Regs | (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | Liability | ☐ 446 American with | ☐ 660 Occupational | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION | Disabilities - | Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization | Other | ☐ 690 Other | FEDERAL TAX SUITS |
| nation Under Equal | ☐ 240 Torts to Land | Application | ☐ 440 Other Civil | | ☐ 870 Taxes (U.S. Plaintiff |
| Access to Justice | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- | Rights | | or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property | Alien Detainee | | | ☐ 871 IRS-Third Party 26 |
| State Statutes | | ☐ 465 Other Immigration | | | USC 7609 |
| | | Actions | | | |

| FOR OFFICE USE ONLY: | Case Number: | **CV11-10805 R(FFMx)** |
|---|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
  ☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
  ☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Georgia - HD Supply Construction Supply, Ltd.<br>Georgia - HD Supply, Inc. |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date December 28, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |